FILED
2010 SEP 27 P 4:20
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ELAINE A. POROVNE : | Case No. 09-25264-TPA | |
| *Debtor* : | Chapter 13 | |
| | | |
| DEUTSCHE BANK NATIONAL : | | |
| TRUST COMPANY, AS TRUSTEE : | | |
| BY ITS ATTORNEY IN FACT : | | |
| OCWEN LOAN SERVICING LLC, : | | |
| *Movant* : | | |
| v. : | | |
| : | Related to Document No. 53 | |
| ELAINE A. POROVNE AND : | | |
| RONDA WINNECOUR : | | |
| (TRUSTEE), : | | |
| *Respondents* | | |
| | | |
| ELAINE A. POROVNE, : | Adversary No. 09-2545-TPA | |
| *Plaintiff* : | Related to Document No. 4 | |
| : | | |
| v. : | | |
| : | | |
| DEUTSCHE BANK NATIONAL : | | |
| TRUST COMPANY, AS TRUSTEE : | | |
| BY ITS ATTORNEY IN FACT : | | |
| OCWEN LOAN SERVICING LLC : | | |
| *Defendant* : | | |

*Appearances:*   Gary Darr, Esq., for Deutsche Bank National Trust Company as Trustee
                Michael S. Geisler., Esq. for Debtor

## **MEMORANDUM OPINION**

Currently before the Court is a ***Motion for Summary Judgment*** ("S/J Motion") filed by Deutsche Bank National Trust Company as Trustee at Adv. No. 09-2545, Document No. 4, by its attorney in fact Ocwen Loan Servicing LLC ("Ocwen"). The *S/J Motion* is in reference to the *Complaint* filed in the within adversary at Document No. 1 by the Debtor, Elaine A. Porovne, in

1

which she seeks to set aside a sheriff sale of her residence.[1] Also pending is a ***Motion for Relief from the Automatic Stay*** filed by Ocwen at Document No. 53 ("Stay Motion") in the main bankruptcy case.

In her *Complaint,* the Debtor seeks to set aside the sheriff's sale of her real property that was completed prior to the bankruptcy filing while, in the *Stay Motion,* Ocwen simultaneously seeks relief from stay to complete its state court foreclosure proceeding by prosecuting a state court action in ejectment. For the reasons which follow, the *Complaint* will be dismissed and the *Stay Motion* will be granted.

## *PROCEDURAL AND FACTUAL BACKGROUND*

The underlying facts are not in dispute and are readily ascertainable from the Court's docket in this case, the docket from the Debtor's prior bankruptcy, Case No. 05-27139-TPA ("2005 Case"), and, from the *Stipulation of Facts* filed by the Parties in the Adversary Proceeding at Document No. 19.[2] This record demonstrates a longstanding controversy between the Debtor and Ocwen, a recitation of which, is necessary for the Court's decision.

---

[1] The matter originally began by Ocwen's filing of a *Motion for Relief from Stay* in the main proceeding. When the Debtor filed her *Response* to the *Stay Motion* it became apparent that matters involving an "interest in property" pursuant to *Fed.R.Bankr.P. 7001* were implicated. On consent of the Parties, the Court converted the matter to an adversary proceeding, the Debtor's *Response* being designated the *Complaint*. *See Debtor's Response to the Motion for Relief from Stay,* the *Complaint* herein, filed at Document No. 1, Adversary Proceeding No. 09-01545, ¶ 4 and 9.

[2] The Court may take judicial notice of its docket of facts not subject to reasonable dispute. *Fed.R.Evid. 201*, incorporated in these proceedings by *Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995); *In re Berg*, 356 B.R. 378 n.1 (Bankr. E.D. Pa. 2006).

On October 21, 2001, the Debtor obtained a loan from Ocwen secured by a mortgage on her residence, real property known as 428 W. Railroad Street, Verona, PA. ("Property"). On October 14, 2004, the Debtor defaulted on her payments and Ocwen instituted foreclosure proceedings and obtained a default judgment. A sheriff's sale of the Property was set for June 6, 2005. Four days prior to the scheduled sheriff's sale, however, the Debtor filed for relief under Chapter 13 of the *Bankruptcy Code* ("2005 Case").[3]

At the time of filing the *2005 Case*, the Debtor owed Ocwen an arrearage claim in the amount of $17,838. The Debtor filed a *Chapter 13 Plan* which was designed to cure the arrearage and reinstate Ocwen's mortgage. By Order dated November 9, 2005, the *Plan* was confirmed.

The Debtor quickly fell into default on her *Plan* payments as a result of which the Chapter 13 Trustee moved to dismiss. At about the same time, Ocwen filed a *Motion for Relief from the Automatic Stay* due to the Debtor's failure to make her required payments. Ocwen's *Motion* was granted on May 19, 2006, but relief was stayed for 21 days to give the Debtor a chance to bring her plan payments current. *See 2005 Case* at Document No. 43.

On June 14, 2006, Ocwen filed a *Certification of Default* indicating that the Debtor had not brought the *Plan* current and by *Order* dated June 16, 2006, was granted unqualified relief from the automatic stay as previously authorized by the May 19, 2006 *Order*. *Id.* at Document No. 47.

---

[3] *See In re Elaine A. Porovne*, Case No. 05-27139.

The Debtor then made some payments to the Chapter 13 Trustee and on August 23, 2006, filed a *Motion to Reinstate the Automatic Stay. Id.* at Document No. 50. On October 4, 2006, an order was entered which provided that "the automatic stay is reinstated temporarily to stop any currently pending Sheriff Sale for the month of October, 2006." *Id.* at Document No. 55. Prior to entry of this order, on October 2, 2006, Ocwen had proceeded to conclusion with a sheriff's sale of the Property in the pending state foreclosure action. This prompted the Debtor to file an *Emergency Motion to Set Aside the Sheriff Sale* on October 17, 2006. The *Emergency Motion* was resolved by a stipulated order dated October 31, 2006, the content of which was ostensibly negotiated and agreed upon by both Ocwen and the Debtor and her attorney, *Id.* at Document No. 70 ("Consent Order"). The *Consent Order* provided, in relevant part, as follows:

> 1. That the Sheriff Sale of the Property ... is hereby SET ASIDE and VACATED pursuant to the terms of this ORDER. The Sheriff shall take appropriate steps to VOID the sale and reschedule the Sheriff Sale in accordance with paragraph 2 of this Order.
>
> 2. The Sheriff Sale conducted on October 2, 2006 shall be rescheduled to the regularly scheduled January, 2007 Sheriff sale date for Allegheny County without the need for any further notice and/or advertising. *Further, Ocwen may adjourn the Sheriff's Sale of the Property, scheduled for the regularly conducted January, 2007 Sheriff Sale in accordance with this Order, from month to month or such other longer period of time as Ocwen may request from the Sheriff of Allegheny County, without the need for further advertising and/or notice an unlimited number of times during the pendency of the instant Bankruptcy Case (until such time as the Bankruptcy case is dismissed and/or terminated - which may be shown by a copy of the docket report). The Sheriff shall announce each such adjournment in accordance with its normal policies and procedures.*[1]
> (emphasis added)
> . . .
>
> 6. In the event Debtor fails to make any of the payments set forth herein above (or fails to maintain insurance on the Property) on or before their due dates, Ocwen shall give Debtor and Debtor's counsel notice of the default and if such default is not cured within ten (10) days of said notice, upon certification to the court of such default, and request for Order, with

> a copy to Debtor and Debtor's counsel, Ocwen shall immediately have relief from the bankruptcy stay....
>
> . . . . .
>
> 11.  It is understood by and between the parties that this filing represents Debtor's last opportunity in Bankruptcy to save the Property from foreclosure. . . . . .
>
> ---
>
> [1]  This provision is intended to allow Ocwen to maintain the Property on the Sheriff Sale list such that if the Debtor defaults it may *immediately proceed to sell the property upon entry of relief from the automatic stay or dismissal/ termination of the bankruptcy proceeding.* (emphasis added)

*Id.* at Document No. 70.

On March 17, 2009, the Chapter 13 Trustee filed another *Certificate of Default* seeking dismissal of the *2005 Case* for failure of the Debtor to make *Plan* payments. The next day, Ocwen, pursuant to the terms of the *Consent Order*, filed a *Certification of Default*. By Order dated March 19, 2009, Ocwen was granted relief from the automatic stay

> "to exercise all rights and remedies available to it as a mortgagee under state law including but not limited to, the initiation of and/or continuation of execution process through sheriff's sale, and ejectment process regarding debtor and premises .... "

*Id.* at Document No. 114.

Pursuant to the terms of the *Consent Order,* Ocwen proceeded to have the Property sold at the next scheduled sheriff sale, i.e., on April 6, 2009. As quoted above, the *Consent Order* provided for an adjournment of the sheriff's sale for an unlimited number of times, without the need for further advertising or notice, and directed that the sheriff announce each such adjournment. Other than the notice provided for by the terms of the *Consent Order* itself, the Parties' agreement

provided for no additional notice of a future sheriff's sale. Although nothing in the current record reflects the manner or specific date upon which the Debtor actually learned that the April 6, 2009 sheriff sale occurred, there is no dispute Ocwen was the successful bidder. On April 30, 2009, the Sheriff of Allegheny County issued the deed to the Property which was later recorded on June 22, 2009. Thereafter, because of the Debtor's failure to make her *Plan* payments, the *2005 Case* was dismissed by *Order* dated June 23, 2009.

On July 16, 2009, the Debtor filed the present bankruptcy case, apparently for the purpose of obtaining a stay of the ejectment action that Ocwen had initiated in state court following its receipt of a sheriff's deed to the Property.[3] Ocwen then promptly filed a motion seeking relief from stay so that it might proceed with its pending ejectment action. In her *Response* to that motion, the Debtor alleged that proper notice of the sheriff's sale was not given, thereby resulting in a deprivation of her constitutional right to due process.

On September 16, 2009, a preliminary hearing on the motion for relief from stay took place. The Court issued a verbal order at the hearing converting the matter to the present Adversary Proceeding, with the Debtor's response to Ocwen's *Stay Motion* functioning as the *Complaint*. Subsequently, and perhaps due to some uncertainty as to whether its previously-filed motion for stay relief was encompassed within the new Adversary Proceeding, Ocwen filed the *Stay Motion* at Document No. 53.

---

[3] The date the ejectment action was filed is not entirely clear from the record. Ocwen alleged in its *Stay Motion* that it was filed on July 6, 2009, and the Debtor admitted that allegation when she responded to the motion. However, subsequently, when the Parties submitted stipulations of fact, they stated August 7, 2009 as the filing date of the ejectment action. In any event, the true date of the filing of the ejectment case is not material to this decision.

6

On March 15, 2010, the Debtor filed her *Pretrial Statement* in the Adversary Proceeding and there stated the issue as whether the sheriff sale should be set aside "where it was done pursuant to a writ of execution that was previously set aside." Adv. Document No. 6 at p.4.[4] On May 12, 2010, a status conference was held at which time both Parties agreed that resolution of the pending issues involved solely a question of law. Now that the Parties' have filed their *Stipulation of Facts* (Adv. Document No. 19) and Briefs in support of their respective positions, the matter is ripe for decision.

### *DISCUSSION*

As is true in every matter the Court is asked to decide, it must first determine whether it has the subject matter jurisdiction to hear the case. After reviewing the pleadings, the record and relevant case law, the Court finds that, pursuant to the *Rooker-Feldman* doctrine, it lacks subject matter jurisdiction to adjudicate Debtor's claim in this matter. In the alternative, the Court finds that even if it has the necessary subject matter jurisdiction to make a decision on the merits, the *Complaint* should be dismissed and the *Stay Motion* granted.

*Rooker-Feldman* precludes "inferior" federal courts from sitting as appellate courts in review of state court judgments. *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). The doctrine

---

[4] The Debtor did not mention the due process argument, which was the only one set forth in the *Complaint*. Even though the *Complaint* and the *Pretrial Statement* are thus inconsistent, the Court will give Debtor the benefit of the doubt and consider both arguments in deciding this matter. At argument on the *S/J Motion*, the Debtor attempted to "fine tune" her position arguing that although she did not quibble with the efficacy of the sheriff sale itself, because the notice of it was defective, the pending ejectment action should be set aside. Although it appears the Debtor is "splitting hairs" in an effort to circumvent the issue of subject matter jurisdiction, this basis for relief was not raised by the Debtor in her *Complaint*, *Pretrial Statement*, or brief and is therefore not relevant to the Court's decision.

applies to those cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.,* 544 U.S. 280, 284 (2005). A claim is barred under the doctrine:

> [F]irst, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that the federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

*Knapper*, 407 F.3d at 580.

One of Debtor's "claims" is that the sheriff sale should be set aside because it was done pursuant to a writ of execution that was previously set aside. If by this the Debtor means to suggest that the *Consent Order* from the *2005 Case* somehow set aside the writ of execution, her argument is simply based on a factually incorrect premise. The *Consent Order* says not one word about the writ of execution. If instead the Debtor is suggesting that the writ of execution was somehow "set aside" under Pennsylvania law because of the passage of time, that is something that was necessarily "actually litigated" in state court, even if *sub silentio*, because a sheriff sale is dependent on a valid writ of execution. *See Pa.R.C.P. 3180(a)*. The Debtor had an opportunity to contest the validity of the writ of execution in state court even after the sheriff sale had occurred, at any time up to delivery of the deed, but failed to do so. *See Pa.R.C.P. 3132.* It is thus clear that this claim of the Debtor is barred under the "actually litigated' prong of the *Rooker-Feldman* doctrine.

Debtor's other claim is based upon an alleged deprivation of constitutional due process rights. That claim was not actually litigated in state court and does not fall under the first prong of the *Rooker-Feldman* doctrine. Rather, this Court must look to the second prong of the test, i.e., whether the due process claim is "inextricably intertwined" with the state court adjudication. A federal claim is considered to be "inextricably intertwined" with an adjudication by a state court when the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief sought or must take an action that would negate the state court judgment. *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004); *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003).

Giving the Debtor the benefit of every doubt, as best the Court can ascertain from her pleadings, the Debtor's assertions that she did not properly receive appropriate notice are expressly based on an alleged constitutional deprivation. Under no interpretation of her *Complaint* does the Debtor seek to strike or open the state court judgment. In fact, at oral argument counsel for the Debtor conceded that she did not dispute the validity of the underlying judgment in the foreclosure action. Debtor's challenge appears to be a constitutional one directed solely to the contention that she never received notice of the sheriff sale beyond what was bargained for in the *Consent Order*.

In order to conclude that there was somehow a lack of authority to conduct the sale or that the Debtor was denied her constitutional right to due process, this Court would have to find that the state court judgment was erroneously entered. Such a determination is the very kind of finding that the *Rooker-Feldman* doctrine prevents this Court from making. The decision of the United States Court of Appeals for the Third Circuit, in *In re Knapper*, 407 F.3d 573 (3d Cir. 2005), is particularly illustrative, factually similar and controlling here.

In *Knapper*, a Chapter 13 debtor attempted to set aside state foreclosure sales on the basis that they were conducted in violation of her due process rights. Knapper contended that she failed to receive appropriate notice of the foreclosure actions and that since service of process was defective, the state court never attained personal jurisdiction over her.[5]

As with the present matter, Knapper never entered a defense in the state court foreclosure proceeding and default judgments were entered. Upon filing her fifth bankruptcy, Knapper filed an adversary proceeding seeking to set aside the default judgments and resulting sheriffs sales. The Court of Appeals found that Knapper could not have prevailed on her federal claim without obtaining an order that would negate the state court judgment and therefore ruled Knapper's "federal claim" was "inextricably intertwined" with the state court adjudications. Accordingly, Knapper's claim was barred by the *Rooker-Feldman* doctrine. The fact that Knapper's claims were "cloaked in the guise of an adversary proceeding in bankruptcy court" did not alter the court's finding. *Id.* at 581.

Similar to the debtor in *Knapper*, here the Debtor seeks to have the completed sheriff's sale set aside due to lack of procedurally required state court notice. The Debtor does not dispute she received the notice required by the *Consent Order*. As in Knapper, the Debtor did not appear in state court to petition the court to open or strike the default judgment, nor did she petition to set aside the sheriff sale. Instead, the Debtor, like Knapper, has come to bankruptcy court to attempt to have this Court negate the previously concluded sheriff's sale. The relief sought here by

---

[5] As indicated above, in the present case the Debtor concedes the validity of the underlying foreclosure judgment. Her position is thus even weaker than was the losing position of the debtor in *Knapper*.

the Debtor, as in *Knapper*, can only be predicated upon a voiding of the state court adjudication. As the Court of Appeals stated in *Knapper,* the Debtor's

> [c]onstitutional claim would just as surely "change the state court result," because the federal judgment she is seeking would reduce the state court judgments to nullities. That is precisely what *Rooker-Feldman* prohibits, and federal subject matter jurisdiction over Knapper's "bankruptcy" claim is therefore precluded by the *Rooker-Feldman* doctrine.

407 F.3d at 582.

At argument on the *S/J Motion* the Debtor attempted to distinguish *Knapper* on the basis that she was only attacking the sheriff's sale itself rather than the judgment originally giving rise to the sheriff's sale. This is a distinction without a difference.

In Pennsylvania, once an *in rem* foreclosure judgment is obtained, part of the relief afforded by the judgment is the resulting sheriff's sale of the property. The Debtor's attack on the notice procedure implicated during the execution process of this judgment is tantamount to an attack on the state court judgment itself. If Knapper precludes this Court from exercising subject matter jurisdiction over the *in rem* state court foreclosure judgment, it naturally follows that this Court lacks subject matter jurisdiction to review the process associated with enforcement of that state court *in rem* foreclosure judgment.[6] Indeed, the debtor in *Knapper* itself was attempting in part to set aside

---

[6] This matter must be placed in further context. Prior to the filing of the current bankruptcy case, a sheriff's sale of the Property had taken place, the deed delivered and recorded. The only available state court procedure to attack a sheriff's sale was by petition, filed *before* delivery of the sheriff's deed. *Mortgage Elec. Registration Sys., Inc. v. Ralich*, 982 A.2d 77, 80 (Pa. Super. Ct. 2009). Following delivery of the sheriff's deed to a purchaser, absent a constitutional deprivation not "inextricably intertwined" with the state court judgment or independently available through a bankruptcy created cause of action under Chapter 5 of the *Bankruptcy Code*, the only attacks on the sheriff's sale available to the Debtor in this Court are those based on fraud or lack of authority to make the sale. *Id.*; *In re Gargani,* 398 B.R. 839 (Bankr. W.D. Pa. 2009); *In re Rocco*, 319 B.R. 411, 414-15 Bankr. W.D. Pa. 2005).

11

a completed sheriff sale, *see* 407 F.3d at 578, and the court there obviously did not see a reason to find jurisdiction as to that sliver of the requested relief.

In the alternative, even assuming this Court had jurisdiction to hear the matter, the Debtor is no further ahead. The Debtor argues that Ocwen should have been required to reissue the writ, and therefore re-advertise the sale of the Property before it could be conveyed by the April 6, 2009 sheriff sale, so that the Parties would be restored, as far as possible, to the positions they occupied before the 2006 sheriff sale. Debtor's argument fails because that is exactly what happened here.

The 2006 sheriff sale was set aside and rescheduled for a later date as provided in the *Consent Order,* while the Debtor was given a further opportunity to make the required payments to save the Property from foreclosure. The *Consent Order* also allowed Ocwen to continue to postpone the sale from month to month, indefinitely, without the need for further advertising or notice. *Stipulation of Facts,* Document No. 19, ¶ 19. There is no dispute that Ocwen, all in accordance with the terms of the *Consent Order*, continued the sheriff's sale to the April, 2009 sale date. *Id.* at ¶ 20.

Postponement of the sale preserves the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay. *Taylor v. Slick*, 178 F.3d 698 (3d Cir. 1999); *In re Angulo*, 2010 WL 1727999 at *5 (Bankr. E.D. Pa., Apr. 26, 2010). To require Ocwen to restart the foreclosure process under these facts would actually place the Debtor in a much better position than she was prior to the sale, contrary to the terms of the agreement of the Parties as expressed in the *Consent Order*, and at odds with the general, legal proposition advanced by the Debtor.

12

The April 6, 2009 sheriff sale also met all applicable requirements under Pennsylvania law concerning the writ of execution. *Pennsylvania R.Civ.P. 3183* entitled "Stay of Execution. Setting Aside Execution" provides that "after termination of a stay, execution may proceed without the reissuance of a new writ." *Pa.R.Civ.P. 3183(f). See also In re Taylor,* 207 B.R. 995, 1002 n16 (Bankr. W.D. Pa. 1997). In the current matter, the 2006 sheriff's sale was set aside and vacated pursuant to the terms of the *Consent Order* which not only provided for the rescheduling of the sale but allowed it to remain "pending" until and unless the Debtor defaulted on her payments. This was permissible under Pennsylvania law. *See Pa.R.Civ.P. 3183(c)* (in an order staying execution a court may impose such terms and conditions as it deems appropriate). When the Debtor defaulted, Ocwen, by *Order* dated March 17, 2009, received relief from the automatic stay allowing it to continue with the execution and ejectment process. Pursuant to *Rule 3183(f)* and the *Consent Order*, upon termination of the stay, reissuance of the writ was not required.

Finally, the April 6, 2009 sheriff sale did not violate the Debtor's constitutional due process notice rights. Individuals are entitled to "adequate notice" detailing the reasons for a proposed termination of a constitutionally protected liberty or property interest prior to its deprivation. *Taylor v. Slick,* 178 F.3d 698, 703 (3d Cir. 1999) "To satisfy due process requirements, the notice provided must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'." *Id.* quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950). "The level of notice to be given, however, depends on the interest at issue because 'due process is flexible and calls for such procedural protections as the particular situation demands'." *Taylor v. Slick,* 178 F.3d at 703, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Consistent with long-recognized notions of due process, Pennsylvania has enacted a series of procedural rules relating to the extent of proper notice required to effectuate a sheriff sale of real property. *See Pa.R.C.P. 3129.1 - 3129.3.* Generally, *Pa.R.C.P. 3129.3* provides that if a pending sale of real property is "stayed, continued, postponed or adjourned" for any reason, then typically "new notice" is required, but there are two exceptions. First, new notice is not required when a sale is continued to a date certain within 130 days of the scheduled sale and an appropriate notice is given at the originally scheduled time of the sale. *See Rule 3129.3(b)*. Since here the sale did not occur within 130 days of the originally scheduled sale the exception provided by *Rule 3129.3(b)* is inapplicable.

The second exception to the requirement of new notice is where a "special order of court" is issued dispensing with the requirement of additional notice. *Pa.R.C.P. 3129.3(a)*. This exception "gives the court discretion to allow postponement of the sale without new notice in appropriate cases." *Rule 3129.3, Explanatory Comment*. The Court finds that this exception is applicable here because the *Consent Order* functioned as a special order of court pursuant to *Rule 3129.3(a)* since it authorized a special notice procedure outside the ambit of the general rule.[7] This is in accord with the flexibility and discretion possessed by a bankruptcy court in order to fashion relief appropriate to the circumstances presented by a motion for relief from stay. *In re The Score Board, Inc.,* 238 B.R. 585, 593 (D.N.J. 1999).

---

[7] Although *Rule 3129.3(a)* does not explicitly provide that the "special order of court" can be one issued by a federal court, such as a bankruptcy court, that is the logical implication. For instance, somewhat analagously, *Pa.R.Civ.P. 430(a)* allows a plaintiff to "move the court for a special order" authorizing some alternative method of service of process to be employed if service cannot be made in the normal fashion. It is well-recognized that federal courts have the ability to issue such a "special order" under *Rule 430(a)*. *See,* e.g., *Countrywide Home Loans, Inc. v. Stringer,* 2008 WL 3853239 (M.D. Pa. 2008).

The *Consent Order* was specific regarding the continuation of sale issue. No additional advertising and/or notice was required. It specifically provided that Ocwen may "adjourn the sale" without the need for any additional advertising or notice "for an unlimited number of times" during the pendency of the current bankruptcy case simply with an announcement by the sheriff of each such adjournment in accordance with the sheriff's normal practices and procedures. *Consent Order,* ¶, quoted *supra* at p.5.

A footnote to ¶ 2 of the *Consent Order* also provided that "[t]his provision is intended to allow Ocwen to maintain the Property on the Sheriff Sale list such that if the Debtor defaults it may "immediately proceed" to sell the property upon entry of relief from the automatic stay. *Consent Order,* n.1. Upon Debtor's default, Ocwen was only required to give the Debtor and Debtor's counsel notice of the default with a ten day opportunity to cure prior to certification of the default to the Court. *Id.* ¶ 6. The Debtor does not dispute that all these conditions precedent were met in this regard.

The Debtor was a party to the *Consent Order*, which explicitly provided for a continuance of the 2006 sheriff sale to January, 2007. The Debtor was also aware that the *Consent Order* provided that the sale could be continued any number of times thereafter by the sheriff announcing an adjournment according to his normal policies and procedures, without further need for notice or advertisement.

There is no dispute that Ocwen properly followed the procedure required by the *Consent Order*. Upon Debtor's default, Ocwen, by letter dated March 9, 2009, advised both the

15

Debtor and her counsel of the default and indicated that it would "certify" the default to the Court and obtain relief from stay if the default was not cured in 10 days. *2005 Case,* Document No. 113, Ex. A. This notice served to alert the Debtor to the fact that Ocwen was attempting to effectuate the sheriff's sale without further delay. Thereafter, Ocwen obtained relief from stay by *Order* dated March 19, 2009. *2005 Case*, Document No. 114. It is undisputed that the Debtor received a copy of the March 19, 2009 *Order. 2005 Case*, *BNC Certificate of Mailing,* Document No. 114. By its terms, the *Consent Order* clearly provided that once it obtained relief from stay, Ocwen then would proceed with an immediate sale, apparently having specifically maintained the Property on the sheriff sale list for this purpose during the pendency of the bankruptcy case.

Nowhere in the record does the Debtor dispute that the required announcements for continuation of the sale were appropriately and timely made by the Sheriff consistent with the requirements of the *Consent Order*. The *Consent Order* allowed for the sale to be continued "an unlimited number of times" while the bankruptcy case remained pending. As such, it is the Debtor who was duty bound to either attend each scheduled sale or otherwise make inquiry to learn of each continued sale date. *Taylor v. Slick*, 178 F.3d at 703. This is especially true where Debtor waived any other notices by entering into the *Consent Order*.

Under these facts, assuming the Court even had the requisite subject matter jurisdiction to make such determination, clearly the Debtor suffered no constitutional deprivation when the sheriff's sale proceeded without further notice or advertising. The terms of the *Consent Order* gave the Debtor more than adequate notice to satisfy any due process requirements arguably due her at that point. This result aligns with the clear intent of the Parties as outlined in the *Consent*

16

*Order*. The Debtor received one last chance to save her home from foreclosure. Upon default, and her failure to timely cure, Ocwen obtained relief from stay and immediately proceeded to sell the Property at the next scheduled sheriff's sale.

As noted, Ocwen also seeks relief from the automatic stay to proceed with its rights under applicable state law concerning the Property. The Debtor filed no formal response to the *Stay Motion*. At the May 12, 2010 preliminary hearing on the *Stay Motion* the Debtor simply reiterated her argument in support of the *Complaint*. Having decided those questions in favor of Ocwen and against the Debtor, there is no reason to further delay the grant of the *Stay Motion*.

### *CONCLUSION*

To sum up, this Court finds that it does not possess the subject matter jurisdiction necessary to provide the relief requested by the Debtor in her *Complaint*. Even assuming such jurisdiction existed, under the facts of this case the Court would find that the April 6, 2009 sheriff sale and the resulting deed to Ocwen met all legal requirements. Therefore, the Debtor's *Complaint* will be dismissed. Ocwen's *Motion for Summary Judgment* and *Motion for Relief from the Automatic Stay* (Doc. No. 4) will be granted in order to allow it to proceed with the pending state court ejectment action.

.       An appropriate Order will be entered.

Dated: September 27, 2010

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
    Michael S. Geisler, Esq.
    Kevin P. Diskin, Esq.
    Richard F. Stern, Esq.
    Ronda Winnecour, Esq., Ch. 13 Trustee